IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| FRANKIE RUSSELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:03cv649-SRW |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Frankie Russell brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income and disability insurance benefits under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On September 15, 1998, plaintiff filed an application for Supplemental Security Income (SSI). On October 19, 1999 and May 10, 2000, after the claim was denied at the initial administrative levels, an ALJ conducted administrative hearings. The ALJ rendered a decision on July 27, 2000, in which he found that plaintiff was not disabled. On May 16, 2003, the Appeals Council denied plaintiff's request for review and, accordingly, the

decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff presents three substantive issues for the court's review.[1] She argues: (1) that the Commissioner erred in failing to find plaintiff presumptively disabled under ¶

---

[1] A fourth issue, whether the Commissioner's decision "is supported by substantial evidence and issued in accordance with applicable law," Plaintiff's "Statement of Issues" at 11, will not be considered by the court. See Order, Doc. # 3, ¶ 2)(requiring *specific* identification of issues and advising that issues not properly identified will not be considered by the court); id. at p. 2 n. 1 ("[G]eneral statements of issues such as 'the ALJ's decision is not supported by substantial evidence' will not be considered by the court.").

12.05(B) of the "Listing of Impairments" (mental retardation);[2] (2) that the Commissioner erred by failing to grant plaintiff's request for issuance of a subpoena to a post-hearing consultative examiner pursuant to Demenech v. Secretary of the Department of Health and Human Services, 913 F. 2d 882 (11th Cir. 1990); and (3) that the ALJ failed to evaluate the evidence in a fair and impartial manner. Plaintiff's "Statement of Issues" at 11.

1.   Listing 12.05

Plaintiff disagrees with the ALJ's finding that plaintiff is not mentally retarded. R. 31. She maintains that "the evidence that is from valid sources tends to establish that the plaintiff not only is functioning intellectually in the mild range of mental retardation with an IQ below 59, but also that she has and had deficits in adaptive functioning initially manifested during the developmental period[.]" Id. at 8.

Generally, a claimant "meets the criteria for presumptive disability under section 12.05(b) when the claimant presents a valid IQ score of 59 or less." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). However, "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir.1986)).

In this case, plaintiff was examined by two psychologists: Dr. Alan Blotcky (at her attorney's request) and Dr. Jean Badry (a consultative examiner for the Commissioner). Only Dr. Blotcky diagnosed plaintiff as having mild mental retardation. R. 257. Dr. Badry

---

[2] 20 CFR §416.925, Appendix 1, ¶ 12.05(B).

3

deferred diagnosis, noting that the results of her assessment were "equivocal regarding Frankie's claim for disability. There was a strong flavor of malingering noted and a sense of having been 'coached' how to respond to the examiner." R. 264. Another psychologist, Dr. Nancy Sack, reviewed the record and the reports of Blotcky and Badry as a medical consultant. She testified, *inter alia*, that her "assessment of this file is that this woman is malingering," R. 84, and that plaintiff is "at least at the borderline or higher range in adaptive functioning." R. 87.

> As the ALJ noted, Dr. Sack
>
> stated that the claimant's diagnoses included alcohol intoxication and mild mental retardation. She stated the evidence of record indicated the claimant was malingering. She could keep up the house, had a boyfriend, went shopping and talked on the phone to friends. Dr. Sack stated pulmonary function testing at Russell Hospital indicated the claimant was malingering. She stated that the claimant's memory at the hearing was inconsistent with an IQ score of 58. Dr. Sack opined that there was nothing in Dr. Blotcky's report that questioned the claimant's intelligence and that malingering may have affected her IQ scores. It was Dr. Sack's opinion that the claimant functioned adaptively at a borderline level or higher. She stated that the claimant did not meet the adaptive functioning of mental retardation and the claimant did not have significantly impairments based on the reports from both psychologists. She said her activities of daily living were normal based upon her testimony that she had no difficulties with her personal functioning. She has a moderate social limitation, seldom has difficulties in the areas of concentration/persistence/pace, and no episodes of deterioration. She is no worse than moderately impaired in any respect.

R. 26.

The ALJ concluded that plaintiff had "intellectual functioning at least at a verbal IQ of 58, a performance IQ of 64 and a full scale IQ of 57 and adaptive functioning at least at borderline level." R. 30-31. In doing so, he gave "some weight to the IQ testing performed by Dr. Blotcky but accept[ed] this only as to the claimant's minimum level of functioning." Id. at 29; see also id. at 28. The ALJ explained:

> Dr. Sack testified that the claimant's adaptive functioning is at the borderline or higher level and not at the mentally retarded level, and that she is 'able' to perform the basic mental work activities. She considered all the evidence, including the claimant's testimony that she has no trouble with her personal functioning. Therefore, I accept the claimant's IQ scores but only as the minimum level of functioning. With her adaptive functioning, as Dr. Sack described, coupled with malingering, I find that she has the ability to do work, notwithstanding and consistent with this IQ.

Id. at 28. The ALJ "gave no weight to Dr. Blotcky's opinions of the claimant's degree of limitations as found on the residual functional capacity form," finding them "inconsistent with the record as a whole." Id. As the ALJ noted, Dr. Badry determined that plaintiff had only "a mild impairment in her ability to relate to other people, mild restriction of daily activities, no deterioration in personal habits, a mild degree of constriction of interest ... and no limitations in her ability to perform simple tasks." R. 25.

> The ALJ explained further:
>
> I find Dr. Badrey's report is more reliable than Dr. Dr. Blotcky's because she asked specific questions yielding answers that showed malingering and Dr. Blotcky did not. Dr. Badry asked specific questions designed to determine her mental functioning:
>
>> When asked what $10.00 - $6.00 was she replied "I don't know." When asked what 2 + 2 was, she responded "2." When asked what 1 + 1 was, she said it was "1." She was able to count the number of fingers the examiner was holding up (3). She denied knowing the name of the president, the number of weeks in a year ("10"), or the number of days in a week ("6"). When asked to name the days of the week, she recited, "Tuesday, Wednesday, Thursday, Friday and Sunday." Her identification of similarities was fair. When asked to repeat "-7" she said "7, 7, 7 I got it." ...
>
> Dr. Blotcky's report contains no such dialogue, only his conclusions drawn from whatever questions he chose to ask her. It is true that Dr. Badry was "unable to determine" some work functions and was "unknown" whether she

5

>could perform some mental work activities. These "equivocal" comments sprang from the sense that she was malingering. For this reason, a medical expert, Dr. Sack, was used to solidify the views of the examining psychologists. Dr. Badry's report is not considered "more reliable" in that her conclusions are more acceptable than Dr. Blotcky's, some of hers being "equivocal," although the sense of malingering is a reasonable inference considering how she answered her questions, but because it is more detailed and searching than his and contains more facts which Dr. Sack could use along with all the other evidence, of which neither Drs. Badry or Blotcky were privy, in offering her concluions of the listings and the claimant's work abilities.

R. 28-29.

Accordingly, the ALJ concluded from the evidence in the record that plaintiff's I.Q. scores were inconsistent with the plaintiff's actual intellectual functioning and, thus, that the plaintiff does not meet the criteria of listing 12.05. The ALJ's decision is reviewable by the court for substantial evidence.

In this case, the court finds ample evidence in the record to support the ALJ's decision that the plaintiff does not meet listing 12.05(B). No treating doctor found plaintiff to be mentally retarded; plaintiff never received this diagnosis prior to Dr. Blotcky's evaluation. The ALJ properly explained his rationale for disregarding this portion of the opinion of Dr. Blotcky. Furthermore, both Dr.Badry and Dr. Sack believed that the plaintiff was malingering. The opinions of Drs. Badry and Sack concerning plaintiff's residual functional capacity, the extent to which her adaptive functioning is inconsistent with her IQ scores, and the likelihood that she is malingering provide substantial evidence to support the decision of the ALJ. "Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan,

894 F.2d 1520, 1529 (11th Cir. 1990); see also Barron v. Sullivan, 924 F.2d 227, 229-30 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and [the court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned.").

2.   Post-hearing Subpoena

Plaintiff contends that the ALJ erred by failing to allow her to subpoena and cross-examine Dr. Badry concerning her psychological examination as required by Demenech v. Secretary of the Department of Health and Human Services, 913 F. 2d 882 (11th Cir. 1990). In Demenech, the Court determined that it violates a claimant's right to procedural due process for the Secretary to deny a claimant Social Security benefits based upon post-hearing medical reports without giving the claimant an opportunity to subpoena and cross-examine the authors of such reports. Id. at 884; see also Leik v. Barnhart, 296 F.Supp.2d 1345, 1350 (M.D. Fla. 2003).

Plaintiff's argument is without merit. Demenech clearly applies only to *post-hearing* medical reports. Demenech, 913 F. 2d at 884. ALJ held a "partial" hearing on plaintiff's claim for benefits on October 20, 1999, but continued the hearing for psychological examination. R. 22; R. 35-51.[3] Dr. Badry conducted her consultative examination on December 13, 1999, and submitted her report on December 16, 1999. R. 261. Thereafter, the ALJ held what he specifically described as a "full de novo hearing" on May 10, 2000. R. 22; R. 53-120. Counsel for plaintiff agreed with the ALJ that the May 10, 2000, hearing

---

[3] At this hearing, the ALJ stated, "... I don't think the record would be complete without a psychological examination.... I don't see any reason to go any further with it until we get that done." R. 42.

was a de novo hearing. R. 54 (ALJ: "...I'm inclined to treat this as a de novo hearing, so is that the way you see the posture of the case? ATTY: "Yes, I guess I do."). In his decision, the ALJ expressly determined that Dr. Badry's report was not a post-hearing report under Demenech because it was followed by a full de novo hearing. Therefore, he overruled plaintiff's request to confront and cross-examine Dr. Badry. As the ALJ explained:

> After this report of Dr. Badry was proferred, Mr. Booker requested the right to confront and cross-examine here based upon the holding in Demenech vs. Secretary, 913 F.2d 882 (11th Cir. 1990)(Exhibit 17E), which holds that a post-hearing consultative examination must be followed by this right. In this case, however, the first hearing before the CE was a brief hearing that lasted 20 minutes without vocational expert testimony; it hardly qualified as a full hearing. The record was not fully developed. The second hearing was a full de novo hearing that was not supplemental to the first; rather, it covered all issues anew. There were psychological and vocational experts. The request to confront and cross-examine Dr. Badry is overruled. Because the examination was followed by a full hearing, it is not a post-hearing examination.

R. 25. The ALJ's decision in this regard was not error.

Even if the court construes plaintiff's request to conduct a post-hearing cross-examination of Dr. Badry after the October 20, 1999 hearing as a pre-hearing request to subpoena Dr. Badry to the de novo May 10, 2000 hearing for cross-examination,[4] the ALJ did not err in denying the request. An ALJ is authorized to issue subpoenas for witnesses under 20 C.F.R. §§ 404.950(d). The party requesting the subpoena must "give the names of

---

[4] Compare R. 199 (December 1, 1999 letter from plaintiff's counsel "reserving" plaintiff's right under Demenech "to confront and cross-examine Dr. Badry if I choose"); and R. 268 ("January 11, 2000 letter from plaintiff's counsel requesting "that Dr. Badry be subpoenaed to testify at a supplemental hearing."). In her request for review of the hearing decision, R. 12, as well as in her brief to this court, plaintiff treats her request to subpoena Dr. Badry as a post-hearing request of the kind governed by Demenech, rather than as a pre-hearing request.

8

the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena." 20 C.F.R. §§ 404.950(d)(2)." However, an ALJ is not required to issue a pre-hearing subpoena for the testimony of a witness unless that testimony "is reasonably necessary for the full presentation of a case." 20 CFR s 404.950(d)(1). A Social Security claimant does not have an absolute due process right to cross-examine a physician providing a pre-hearing report. See Calvin v. Chater, 73 F.3d 87 (6th Cir.1996);[5] see also Butera v. Apfel, 173 F.3d 1049, 1058 (7th Cir. 1999); Nierzwick v. Com'r of Social Security, 7 Fed.Appx. 358, 362 (6th Cir. 2001) (unpublished); Kurtz v. Callahan,132 F.3d 39, 1997 WL 775113, *2 (9th Cir. 1997) (unpublished).

After a careful review of the record, the court concludes that the ALJ did not abuse his discretion in declining to subpoena Dr. Badry for testimony at the May 2000 hearing, as plaintiff did not show that the testimony of this witness was reasonably necessary for the full presentation of her case. Indeed, her lawyer's January 10, 2000, letter to the ALJ thoroughly described plaintiff's objections to the report. R. 268-9. The letter did not demonstrate any

---

[5] In Demenech, the Eleventh Circuit "assume[d], without deciding, that the ALJ ha[d] the discretion to decide when cross-examination is warranted." Demenech, 913 F.2d at 884. Thereafter, in Foxy Lady, Inc. v. City of Atlanta, Ga., 347 F.3d 1232, 1237 (11th Cir. 2003), which was decided in a different context, the Eleventh Circuit relied on the Sixth Circuit's opinion in Calvin to hold expressly "that procedural due process ... does not require an absolute or independent right to subpoena witnesses in administrative hearings." Id. at 1237; see also Travers v. Jones, 323 F.3d 1294, 1297 (11th Cir. 2003) (citing Calvin, and holding that "a party has no right to subpoena witnesses to state administrative hearings.").

need for further testimony.  The letter also failed to state specifically any important facts which Dr. Badry's testimony was expected to prove, or to indicate why these facts could not be proven without issuing a subpoena. Under these circumstances, the ALJ did not err in declining to issue a pre-hearing subpoena to Dr. Badry for the May 10, 2000 hearing.

3.      Bias

Plaintiff maintains that the ALJ was improperly biased against Dr. Blotcky's report "because of a preconceived notion that Dr. Bloctky's reports all indicate disability on psychological grounds."  Plaintiff's "Statement of Issues" at 12.  This contention is without merit.

In his decision, the ALJ discussed his perception that Dr. Bloctky tended to find all his clients disabled on mental grounds only in the context of plaintiff's claim that Dr. Badry was "almost prejudiced."  R. 25-6.  The ALJ explained:

> Now to the claim that she [Dr. Badry] is "almost prejudiced."  No evidence has been offered to show that she is "almost prejudiced."  Even if she was, this goes to the weight to be given the report, not its admissibility; therefore, this objection is overruled.  Nevertheless, some comments about this claim that she is "almost prejudiced" are appropriate.  This objection raises matters outside the record, namely, her performance in other claims.  Nothing is more basic to our system than the concept that findings must have supported in the written record.  This applies to the court system as well as the Office of Hearing and Appeals.  Efforts to discredit doctors' opinions because of what is said to be their "track record" in other cases without proof have uniformly been disapproved by the Appeals Council and federal courts.  Nevertheless, since the issue has been raised and has been opened, it is this writer's experience that in almost six years of hearing claims, there have been no reports of Dr. Blotcky among the dozens of his seen in which the claimant is not found to be disabled on mental grounds after an examination that used to be said in the report to have been done in the lawyer's office in Sylacauga, Alabama, after the doctor traveled from Birmingham.  This is not to accuse Dr. Blotcky of bias or prejudice, but the fact remains that all reports seen from him find the

10

>claimants disabled. It could be said, of course, that only favorable reports have been sent in, however, the firm of McCluskey & Booker is known to this writer to meet its ethical duty to file all relevant medical reports, favorable or not, even from their hired examiners. *This experience with Dr. Blotcky has not been used in weighing his evidence in this claim; rather, it is offered solely to balance the extra-record comment that Dr. Badry is "almost prejudiced."*

Id. (emphasis added).

"A claimant is entitled to a hearing that is both full and fair." Miles v. Chater, 84 F. 3d 1397, 1400 (11th Cir. 1996). "The regulations governing Title II dictate that '[a]n administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision.'" Id. (citing 20 C.F.R. § 404.940). In this case, the ALJ expressly disclaimed any use of his past experience with Dr. Blotcky in weighing the evidence in this case, R. 26, and the court has found nothing in the record to contradict this statement. To the extent that the ALJ rejected Dr. Bloctky's opinion, he did so on substantive grounds. R. 28-29. Accordingly, the court cannot conclude that the ALJ's decision was the result of bias or prejudice in this case.

## CONCLUSION

For the foregoing reasons, and upon its review of the record as a whole, the court concludes that the decision of the Commissioner should be, and hereby is, AFFIRMED. A separate judgment will follow.

DONE, this 2nd day of March, 2006.

11

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE